MASON, Appellant, *v.* NORTHERN PACIFIC RAILWAY
CO. et al., Respondents.

(No. 3,138.)

(Submitted May 21, 1912. Decided May 27, 1912.)

[124 Pac. 271.]

*Personal Injuries—Railroad Crossings—Minors—Duty to Look
and Listen—Contributory Negligence—Jury—Disregard of
Instructions—Verdict Against Law—New Trial.*

Personal Injuries—Railroad Crossings—Minors—Duty to Look and Listen.
  1.  An instruction given in an action by a minor to recover damages
  from a railroad company for injuries sustained by being struck by a
  train while crossing a railroad track in a buggy, that a child is bound
  to exercise only the care of those of his own age and understanding, and
  that if plaintiff did so she was not guilty of contributory negligence,
  correctly stated the law.
Same.
  2.  Instructions which made it the duty of plaintiff in approaching a
  railroad track for the purpose of crossing the same to keep a constant
  lookout in both directions, and to stop, if necessary, and look for a
  train at the last available point and at the last moment of time before
  crossing, *held* to have imposed too great a burden upon her; all she was
  required to do was to exercise reasonable care for her own safety.
Same—Jury—Disregard of Instructions—Verdict Against Law—New Trial.
  3.  Where the jury manifestly disregarded (erroneous) instructions
  which, if heeded, would, under the testimony, have resulted in a finding
  for defendant railroad company, their verdict in favor of plaintiff was
  against law, and an order granting a new trial was proper.

*Appeal from District Court, Yellowstone County; George W.
Pierson, Judge.*

Action by Myrta F. Mason, by Joseph E. Mason, her guardian
*ad litem,* against the Northern Pacific Railway Company and
another. Judgment for plaintiff. From an order granting de-
fendants' motion for a new trial she appeals. Affirmed.

*Mr. F. B. Reynolds,* for Appellant, submitted a brief and
argued the cause orally.

When a person has stopped, looked and listened for the ap-
proach of a train at a certain point reasonably calculated to
afford an opportunity of determining whether or not it is safe
to make the crossing, and thereafter continues to listen until he

reaches the track, then it is a question of fact for the jury whether or not he has exercised ordinary care in selecting the place from which to look.   (*Greenwaldt* v. *L. S. & M. S. Ry. Co.,* 165 Ind. 219, 73 N. E. 910, 74 N. E. 1081; *Malott* v. *Hawkins,* 159 Ind. 127, 63 N. E. 308; *Missouri, K. & T. Ry. Co.* v. *Oslin,* 26 Tex. Civ. App. 370, 63 S. W. 1039; *Galveston H. & H. Ry. Co.* v. *Eaten* (Tex. Civ. App.), 44 S. W. 562; *C. C. C. & I. Ry. Co.* v. *Harrington,* 131 Ind. 426, 30 N. E. 37; *Sprague* v. *N. P. Ry. Co.,* 40 Mont. 481, 107 Pac. 412.)

The foregoing statement is made upon the theory that plaintiff and her brother, who were children, should be held to the same degree of care as would be required of adult persons under similar circumstances.  Plaintiff contends, however, that it would be too harsh to apply this rule to the case at bar.  "It may be stated as a rule sanctioned by many cases that the measure of responsibility of a person of immature years for contributory negligence is regarded as the average capacity of others of the same age, intelligence and experience, and this is to be considered with reference to the character of the danger to which he is exposed."  (White's Supplement to Thompson on Negligence, sec. 309.)  A child is held only to exercise of such a degree of care as is reasonably to be expected of children of his age and experience, and whether or not in any particular case a child has been guilty of contributory negligence is a question of fact for the jury except in such cases in which the child is of so tender years that negligence cannot be imputed to him.  (*Walters* v. *Denver etc. Light Co.,* 12 Colo. App. 145, 54 Pac. 960; *Lynchburg Cotton Mills* v. *Stanley,* 102 Va. 590, 46 S. E. 908; *Mundhenke* v. *Oregon City Mfg. Co.,* 47 Or. 127, 1 L. R. A., N. S., 278, 81 Pac. 977; *Plumley* v. *Birge,* 124 Mass. 57, 26 Am. Rep. 645; *Wright* v. *Detroit etc. Ry. Co.,* 77 Mich. 123, 43 N. W. 765; *Haycroft* v. *Lakeshore etc. R. R. Co.,* 2 Hun (N. Y.), 489; *Daniels* v. *Clegg,* 28 Mich. 32; *Sioux City etc. Ry. Co.* v. *Stout,* 17 Wall. (U. S.) 657, 21 L. Ed. 745; *Tully* v. *Philadelphia W. & B. Ry. Co.,* 2 Penne. (Del.) 537, 82 Am. St. Rep. 425, 47 Atl. 1019; *Elwood Electric Street Ry. Co.* v. *Ross,* 26 Ind. App. 258, 58 N. E. 535; *Rogers* v. *Samuel Myerson Printing Co.,* 103

Mo. App. 683, 78 S. W. 79; *Christensen* v. *Oregon Short Line Ry. Co.,* 29 Utah, 192, 80 Pac. 746; *Washington etc.* v. *Quayle,* 95 Va. 741, 30 S. E. 391; *Denison etc. Ry. Co.* v. *Carter,* 98 Tex. 196, 107 Am. St. Rep. 626, 82 S. W. 782; *Illinois Central. Ry. Co.* v. *Johnson,* 221 Ill. 42, 77 N. E. 592; *Mitchell* v. *Illinois Central Ry. Co.,* 110 La. 630, 98 Am. St. Rep. 472, 34 South. 714; *Quill* v. *South. Pacific Co.,* 140 Cal. 268, 73 Pac. 991; *Cooper* v. *Lakeshore etc. Ry. Co.,* 66 Mich. 261, 11 Am. St. Rep. 482, 33 N. W. 306; *Consolidated Traction Co.* v. *Scott,* 58 N. J. L. 682, 55 Am. St. Rep. 620, 33 L. R. A. 122, 34 Atl. 1094; *Northern Pac. Ry. Co.* v. *Heaton,* 191 Fed. 24; *Pekin* v. *McMahon,* 154 Ill. 141, 45 Am. St. Rep. 114, 27 L. R. A. 206, 39 N. E. 484; .*Lorence* v. *Ellensburg,* 13 Wash. 341, 52 Am. St. Rep. 42, 43 Pac. 20; *Western etc. R. R. Co.* v. *Young,* 83 Ga. 512, 10 S. E. 197.)

In the light of the foregoing decisions, which represent the view of the courts of a large number of the states of this country, it would seem that under the circumstances of this case there could be no question but that the matter of the alleged contributory negligence of the plaintiff and her brother should be left to the jury, and with its decision the court should not have interfered.

*Messrs. Gunn & Rasch,* and *Mr. W. W. Patterson,* for Respondents, submitted a brief; *Mr. Patterson* argued the cause orally.

If the brother of plaintiff, ,who was driving, was guilty of any negligence, it is imputable to plaintiff (*Whittaker* v. *City of Helena,* 14 Mont. 124, 43 Am. St. Rep. 621, 35 Pac. 904); and it was as much the duty of plaintiff to ascertain if a train was approaching as it was that of her brother. (*Brommer* v. *P. A. R. R. Co.,* 179 Fed. 577, 29 L. R. A., N. S., 924, 103 C. C. A. 135; *Farley* v. *Wilmington etc. R. Co.,* 3 Penne. (Del.) 581, 52 Atl. 543.)

The fact that plaintiff's brother looked twice before crossing the track, once when 240 yards away, and the other time when

200 feet away, can avail her nothing, for it was their duty to have looked and listened at a place where such acts would have been effective. (*Sprague* v. *Northern Pacific Ry. Co.,* 40 Mont. 481, 107 Pac. 412; *Hunter* v. *Montana C. Ry. Co.,* 22 Mont. 525, 57 Pac. 140; *Green* v. *Los Angeles Terminal Ry. Co.,* 143 Cal. 31, 101 Am. St. Rep. 68, 76 Pac. 719; *Georgia Ry. Co.* v. *Forshee,* 125 Ala. 199, 27 South. 1010; *Atchison, T. & S. F. R. Co.* v. *Holland,* 60 Kan. 209, 56 Pac. 6; *Cantrell* v. *Erie R. Co.,* 64 N. J. L. 277, 43 Atl. 881; *Washington etc. R. Co.* v. *Lacey,* 94 Va. 460, 26 S. E. 834; *Chicago etc. Ry. Co.* v. *Wheelbarger,* 75 Kan. 811, 88 Pac. 532; *Vreeland* v. *C. S. & M. R. Co.,* 109 Mich. 585, 67 N. W. 905.)   In this case the situation did not call for the exercise of any judgment in selecting one of two or more places from which to look for the train before going so close to the track as to be unable to avoid danger, for if plaintiff or her brother had looked at any point in approaching the track, the train could have been seen for at least half a mile, and when they were from within twenty to thirty feet of the track, there was an unobstructed view of a mile and a half or a mile and three-quarters, and the team could have been stopped with safety at any point before reaching the crossing.

With their vision cut off by the buggy curtains and their ears muffled, plaintiff and her brother were required to exercise a higher degree of care than would ordinarily be required.   (33 Cyc. 1025; *Aurelius* v. *Railway Co.,* 19 Ind. App. 584, 49 N. E. 857; *Blauvelt* v. *Erie R. Co.* (N. J.), 78 Atl. 1048; see, also, *Pepper* v. *Southern Pac. Co.,* 105 Cal. 389, 38 Pac. 974; *Houghton* v. *Chicago G. T. Ry. Co.,* 99 Mich. 308, 58 N. W. 314; *Haas* v. *Grand Rapids & Ind. R. Co.,* 47 Mich. 401, 11 N. W. 216.)

To run the train from sixty to seventy miles an hour over the crossing in question was not negligence, for in the absence of statute, a railroad may, under ordinary circumstances, run its trains over country crossings at any rate of speed consistent with the safety of the persons and things in its charge.   (3 Elliott on Railroads, sec. 1160; *Lake Shore etc. Ry. Co.* v. *Barnes,* 166 Ind. 7, 3 L. R. A., n. s., 778, 76 N. E. 629.)

The fact that plaintiff was a minor is no excuse for her negligence. Both she and her brother must be presumed to know, as a matter of law, the dangers of a railroad track. (*Gehring* v. *Atlantic City R. Co.*, 75 N. J. L. 490, 14 L. R. A., n. s., 312, 68 Atl. 61; *Walker* v. *Wabash R. Co.*, 193 Mo. 453, 92 S. W. 83; *Bourrett* v. *Chicago etc. Ry. Co.* (Iowa), 121 N. W. 380; *Southern Ry. Co.* v. *Jones*, 106 Va. 412, 56 S. E. 155; *Schaefert* v. *C. M. & St. P. R. Co.*, 62 Iowa, 624, 17 N. W. 893; *Anderson* v. *Central R. Co.*, 68 N. J. L. 269, 53 Atl. 391; *Shirk* v. *Wabash R. Co.*, 14 Ind. App. 126, 42 N. E. 656; *Studley* v. *St. Paul etc. R. Co.*, 48 Minn. 249, 51 N. W. 115; 33 Cyc. 993.)

MR. JUSTICE SMITH delivered the opinion of the court.

This is an appeal by plaintiff from an order granting a new trial. She brought her action to recover damages for personal injuries alleged to have been sustained by reason of the negligence of the defendants in running a passenger train upon and against her at a public highway railroad crossing in Yellowstone county. The cause was tried to a jury which rendered a verdict against the defendants. On their motion a new trial was granted.

The facts of the case as shown by plaintiff's evidence are substantially these: On December 23, 1909, when sixteen years of age, accompanied by her brother Joseph, who was fifteen years old, she started from her home about twelve miles away, to drive to the city of Billings. They drove a gentle team attached to a top buggy with the curtains down. Joseph did the driving. He was an experienced driver, well able to control the team. Plaintiff wore a coat with a fur collar and a scarf over her ears; a blanket was wrapped around them. It was a cold day. Joseph had his ears muffled by the flaps of his cap. They approached the railroad track from the west at an angle of about forty-five degrees. They could see the track east of the crossing for a long distance without difficulty, but in order to see to the west it was necessary to look around or over the side curtain. When within 240 yards of the track they stopped

to adjust the blanket and at the same time Joseph looked around the curtain and saw no indication of an approaching train. Just after they had passed the railroad right of way fence they stopped again for about five minutes within 200 feet of the track. When they first stopped Joseph looked around the curtain for a train and saw none; he said he "took a good look." As he was about to start again plaintiff said she thought she heard a train and he thereupon pulled the curtain down and looked again but saw no train; or it may be that the second stop was made because plaintiff thought she heard an approaching train. He then started the horses on a jog trot toward the track. They did not stop or look again. The horses slowed up at the track and just as they were upon it plaintiff said, "There is the train!" Joseph whipped up his team but the locomotive struck the rear wheels of the buggy and plaintiff was thrown out and injured. The train was running at a rate of speed estimated at from forty to seventy miles per hour and no signals of its approach were given. It was a bright day, about 10 o'clock in the morning. From the place where the buggy was stopped the second time Joseph could see at least half a mile to the west, without obstruction to his range of vision. About half a mile from the crossing there was a sugar beet dump, and near the dump were some railroad cars, behind which the train may have been when he looked out the last time. Their father had always warned them to be careful in crossing the track at the place in question. Plaintiff did not look out at all. If the train had been east of the beet dump they could have seen it if they had stopped anywhere from twenty to sixty feet from the track and looked for it.

The court gave the following instruction to the jury: "You are instructed that a child is bound to exercise only the care of those of his own age and understanding, and if you find that the plaintiff and her brother, who was driving the carriage in which she was riding, were children at the time of the alleged injury, and that they exercised such care as a reasonable person of their respective ages would exercise under the circumstances of this case, then neither of them was guilty of contributory

negligence which would defeat plaintiff's right to recover in this action." We think this instruction correctly stated the law. White's Supplement to Thompson on Negligence, section 309, thus states the rule: "The measure of responsibility of a person of immature years for contributory negligence is regarded as the average capacity of others of the same age, intelligence and experience, and this is to be considered with reference to the character of the danger to which he is exposed."

In view of the immaturity of the plaintiff, we cannot say, considering the precautions which were actually taken to discover whether or not a train was approaching, and all the other facts and circumstances of the case, that she was guilty of contributory negligence as a matter of law, and we think the learned district judge erred in so holding. Whether or not she was guilty of contributory negligence was a question of fact to be determined by the jury; they decided the question in the negative, and that decision should stand so far as that feature of the appeal is concerned.

But it is said that the motion for a new trial was properly [2] granted because the verdict is against law in that the jury manifestly disregarded the following instructions, viz.: "If the injured plaintiff or her brother did look or listen at so great a distance from the crossing as to permit a train then not in sight to reach the crossing at the same time they did, or if they looked or listened at a point where any obstruction prevented a good view of the track, and they had a reasonable opportunity to look at another point before going on the track, from which point they could have seen train No. 2 approaching, in time to avoid being struck by it, then plaintiff cannot recover." "The duty of the plaintiff to look and listen for an approaching train before passing over the crossing in question was not fulfilled if she looked for the train at such a distance from the track that a train then out of sight might reach the crossing as soon as she did, or at a point where her view was wholly or partially obstructed, if she could have looked from a nearer and unobstructed place."

Neither of these instructions correctly states the law. They [3] imposed too great a burden upon the plaintiff. If such were the law, a person approaching a railroad track would either be obliged to keep a constant lookout in both directions, or it would be incumbent upon him, in order to avoid the imputation of contributory negligence, to stop, if necessary, and look for a train at the last available point, and at the last moment of time, before crossing the track. The law is that one desiring to cross a railroad track must exercise reasonable care for his own safety. No other burden rests upon him. It is manifest that the jury disregarded these instructions, because the evidence discloses, beyond a doubt, that the plaintiff could have stopped and looked and listened at any point within 200 feet of the track. This she did not do and was not obliged to do; but the court told the jury, in effect, that if she did not do so she could not recover. If the jury had heeded the instruction just quoted, they must necessarily have found for the defendants under the uncontradicted testimony. Because, therefore, the verdict is against law, the order appealed from must be affirmed.

The court in its instruction No. 3 directed the attention of the jury to the question whether plaintiff's brother had reason to believe "that he could reach and cross the track before the arrival of the train." Upon a retrial this instruction should not be given. There is not any evidence to justify it.

The order is affirmed.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

*Affirmed.*